———o———

## No. 4346.

### (Court of Appeal, Parish of Orleans.)

## E. A. WILTSEE, VS. E. H. McCALEB.

1. A telegraphic inquiry directed to a person not a banker, as to whether a "checque" drawn by a third person, if presented at New Orleans, will be paid, and who answers in the affirmative, is liable when it transpires that the instrument is in the form of a draft, not technically a "checque."
2. The substance of the transaction was the guarantee of a loan. The form in which it was embodied is of no import.

Appeal from Civil District Court, Division "B."

Meyer S. Dreifus, Plaintiff and Appellee.

B. R. Forman, Defendant and Appellant.

ESTOPINAL, J.  The question presented in this case is whether a telegraphic injury directed to a person *not a banker*, as to whether a "checque" drawn by a third person if presented at New Orleans, will be paid, and who answers in the affirmative is liable when it transpires that the instrument is in the form of a draft, not technically a "checque."

It may not be denied that there exists a differentiation between a cheque and a draft, and that the guarantee that a "checque," when presented, will be paid is not of the same import as the acceptance of a draft.  Such is the defense set up by the defendant.

The plaintiff having telegraphed defendant whether a certain checque, when presented at New Orleans, would be paid, defendant replied that it would.  Instead of a "checque" a draft was drawn on defendant, which he refuses to pay on the ground that as surety or guarantor of a check he was not primarily ob-

44

ligated; that he was only a guarantor or surety that a check on a bank would be paid, if the bank did not pay it, whereas, as an acceptor, he would be primarily obligated to pay the draft which he had accepted.

We venture the assertion that it is uncommon indeed for a person not a banker to be asked to guarantee the payment of a check. The person interested nearly always, if not always, refers to the bank which the check is drawn on for such information.

The defense urged rests on a plausible technicality, and we do not hesitate in holding that the obvious intent of the parties and certain peculiar conditions in this particular transaction should control in determining the issues.

A brief recital of the facts will be necessary to show wherein, in our opinion, this Court would be doing a palpable injustice were it to adopt the defendant's contention, supported as it is neither by law, jurisprudence, or equity.

On May 22nd, 1905, Thomas M'Caleb, son of the defendant, sent the following telegram, to the plaintiff:
"E. A. Wiltsee,

Mills Building, New York.

"Save me by telegraphing four hundred. In awful mess, hopeless, without immediate relief. Check with explanatory letter ought to reach you by Wednesday—only four weeks for you to wait."

On the next day Thomas M'Caleb sent another telegram to the plaintiff, as follows:

"In order to make assurance doubly sure, telegraph McCaleb, New Orleans, if funds will be there July first to meet check, and in truth he must respond yes, good name depends immediate."

On May 24th, the plaintiff telegraphed E. H. M'Caleb, the defendant, as follows:

"Thomas M'Caleb has sent me checque for four hundred and TWELVE
ten dollars, payable July 1st, anxious to have me cash same. Am willing to do so provided said check will be paid if presented at New Orleans. Answer collect."

The defendant immediately replied to this telegram, saying:
"E. A. Wiltsee, N. Y.

"All right, checque will be paid when presented."
"E. HOWARD M'CALEB.

The plaintiff thereupon telegraphed the Anglo-California Bank at San Francisco, to pay Thomas M'Caleb the amount of the draft, and the bank paid it.

The record shows plaintiff to have been a friend of Thomas M'Caleb, whom he had on several prior occasions assisted by the loan of certain sums of money not exceeding one hundred and fifty dollars in any case. That in every circumstance he had accepted drafts on E. H. M'Caleb, defendant, who, without previously accepting same, had paid them.

The loan requested on May 22nd, being for a considerable amount, plaintiff prudently telegraphed to learn whether "checque" on New Orleans would be paid when presented. Plaintiff may have used the word checque unguardedly, when he should have said draft. He had received two telegrams from Thomas M'Caleb, in which a check was referred to. Plaintiff doubtless had these communications in mind when he sent telegram to the defendant. Be that as it may, we think that defendant's guarantee of payment of a checque absolutely binding upon him, and makes him liable.

Had the instrument been in the shape of a "check," he would, very true, not have been primarily called upon to pay, but would have had to pay had the bank not done so.

Defendant evidently understood he was to guarantee payment of a loan, otherwise he should have advised plaintiff to ascertain *from a bank* as to whether check would be paid. He had paid his son's drafts before to the same party, plaintiff here. He was no stranger to such transactions, and his obligation in this case cannot be avoided by saying that the guarantee "was to see that money was in bank to pay check," and not pay a draft drawn on himself.

The substance of the transaction was the guarantee of a loan. The form in which it was embodied is of no import. The defendant might have made things clearer had he testified.

The judgment of the District Court was for plaintiff, we will not disturb it.

Affirmed.

December 9, 1907.

Rehearing refused December, 30, 1907.